**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEO DECKER; JOHN VISNESKY;** | : | |
| **RICHARD JONES; CHRIS JONES** | : | |
| **and JVD, INC.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **NO.** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL C. BOYD;** | : | |
| **JAMES R. McGONIGLE,** | : | |
| **DR. MICHIE PROCTOR;** | : | **JURY TRIAL DEMANDED** |
| **PAUL D. WILSON; PAUL R.** | : | |
| **QUINTAVALLE, DPM;** | : | |
| **BRIAN W. CLYMER; and** | : | |
| **LONGPORT, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## COMPLAINT

For their Complaint against Defendants, Plaintiffs allege as follows.

1.      This is an action for monetary damages and equitable relief under the

Securities Exchange Act of 1934 and the law of the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

2.      This Court has federal subject matter jurisdiction of Count I under the

Securities Exchange Act of 1934.

3.      This Court has ancillary and supplemental jurisdiction as to the remaining

Counts of the Complaint and diversity jurisdiction as to those Defendants who are not

residents of the Commonwealth of Pennsylvania.

4.     Venue is properly laid in this District because (a) the corporate defendant maintains its corporate headquarters in this District; (b) the Plaintiffs reside in this District and sustained their monetary injuries here; (c) acts material to the transactions and occurrences complained of herein occurred in this District; and (d) the proxy statement and annual report on form IO-K were transmitted to Plaintiffs by means of the United States Mail in this District.

**PARTIES**

5.     Plaintiff, JVD, Inc. ("JVD") is a corporation domiciled in this District.

6.     Plaintiffs, Leo Decker, John Vishnesky, Richard Jones and Chris Jones are record or beneficial stockholders of Defendant, Longport, Inc. and residents of Lehigh or Lackawanna County, Pennsylvania.  Plaintiff Decker is also the president, a stockholder and director of Plaintiff JVD.  Plaintiffs John Vishnesky, Richard Jones and Chris Jones are stockholders of JVD.

7.     Defendant Longport, Inc. ("Longport") is a Delaware corporation whose shares are registered with the Securities and Exchange Commission and which shares trade on the so-called Bulletin Board.  Longport maintains its corporate headquarters in Glen Mills, Pennsylvania, in this District.  As of June 30, 2005, Longport had 23,083,368 shares of $.001 par value stock issued and outstanding.

8.     The individual Defendants are all directors of Longport.  Defendant Boyd is the Chief Executive Officer of Longport.  Defendant Proctor is the chairman of the Board of Directors.  Defendant Wilson is the president of Defendant Longport. Defendants Quintavalle and Clymer are believed and averred to be directors of Defendant

Longport.  Defendant, James R. McGonigle, is the former Chief Executive Officer of Longport.

9.      Longport originated as a development-stage company.  Since 1995, Longport has raised millions of dollars from investors in connection with its effort to develop and market an ultrasound scanner for the diagnosis and treatment of cosmetic injuries, including wounds and pressure ulcers, a.k.a., bed sores (the "Scanner").  The Scanner was approved for distribution and use by the U.S. Food and Drug Administration in or about 1999.

10.      A company called Ultrascan was a predecessor of JVD and was an early investor in Longport.

11.      In or about 1998, JVD was given an exclusive distribution agreement to market the Scanner in the United States.

12.      In or about 2001, JVD and Longport determined to adjust their business relationship.

13.      On or about December 31, 2001, JVD and Longport executed the funding agreement attached hereto as Exhibit "A" (the "Contract") giving JVD the exclusive right to finance the manufacture of Scanners by Longport.  In addition, JVD was issued a block of Longport's stock, which was subsequently distributed to JVD's stockholders, including the Plaintiffs.

14.      During the term of the Contract it remained in full force and effect and was never terminated by either party.

15.      At all times relevant hereto, JVD was ready, willing and able to perform its obligations under the Contract.

16.     Notwithstanding the foregoing, Defendant Longport has materially breached the Contract on numerous occasions, as follows:

(a)     in or about March 2003, rather than complying with the exclusive financing arrangement contained in the Contract, Longport borrowed $200,000 from an entity controlled by Defendant Proctor to finance the production of scanners;

(b)     in or about October 2003, rather than complying with the exclusive financing arrangement contained in the Contract, Longport borrowed an additional $240,000 from an entity controlled by Defendant Proctor;

(c)     in or about 2004, rather than complying with the exclusive financing arrangement contained in the Contract, Longport obtained equity financing from a consortium of venture funds in the amount of approximately $1.5 million; and

(d)     in mid-2005, various insiders of Longport lent approximately $160,000 to Longport to fund current cash needs, including the manufacture of Scanners;

(e)     in September 2005, Longport announced that it had secured an additional $1.2 million in new funding from the same consortium of venture funds; and

(f)     in mid-2006, Longport announced that it had secured an investment of $1.5 million consisting of both an equity and debt component from an entity controlled by Defendant Proctor.

17.     The loans by the Proctor controlled entity constituted acts of self-dealing, were not the result of arms-length bargaining, were unduly favorable to the Proctor-controlled entity and to Proctor.

18.     Upon information and belief, the above financings were also approved by the Board of Directors, a majority of whom (Boyd, Proctor and Wilson) were either

insiders or beneficiaries of the financings or both.  In addition, one of the so-called outside directors (Dr. Quintavalle) had a lucrative consulting contract with Longport, worth $46,000 in 2004, which was controlled by Boyd and/or Proctor.  Both of the so-called outside directors (Dr. Quintavalle and Mr. Clymer) had stock options for 300,000 and 200,000 shares respectively.

19.      Defendant, Boyd, as signatory to the Contract, had personal knowledge that the above transactions violated the Contract.  Upon information and belief, the other individual defendants were also aware of the Contract and were further aware that the above transactions violated the Contract.  In the alternative, the other individual Defendants were aware that the source of the first two loans was an entity controlled by a fellow director and were grossly negligent in not being aware of the Contract.

20.      In any event, as detailed above, the Board lacked the necessary independence to entitle itself to the protection of the "business judgment" rule.

21.      In early 2001, Defendant Boyd, at a meeting at the Lansdale Holiday Inn, had stated to Plaintiffs that Longport's breaches of the Contract were in retaliation for Plaintiffs' retaining legal counsel to vindicate their rights.  Defendant Boyd has also repeated this explanation to Plaintiff Decker on more than one occasion.

22.      During 2004, defendant Boyd made repeated attempts to intimidate plaintiffs and urged them to sever their relationship with their prior counsel before he would negotiate a settlement of Plaintiffs' claims.

23.      When Plaintiffs severed their relationship with prior counsel, Defendant Boyd made a bad faith compromise offer which he knew would not be acceptable to Plaintiffs.

24.     As a result of the above-listed material breaches of the Contract, Defendant Boyd has been able to obtain approximately 2.037 million shares of Longport's stock by means of stock options.  Approximately one million shares of these options have been exercised.

25.     As a result of the above-listed material breaches of the Contract, Defendant Proctor and/or the Proctor-controlled entity have been able to obtain stock or stock options in excess of 35% of Longport's stock.

26.     Defendants Boyd and Proctor, by means of their self-dealing and inducing Longport to breach the Contract, collectively control in excess of 45% of Longport's stock.

27.     The consideration for said stock was grossly inadequate and no reasonable director would have authorized such grants of stock.

28.     Accordingly, the other individual Defendants were grossly negligent or upon information and belief, were themselves guilty of self-dealing in authorizing such grants of stock.

29.     In 2004, Plaintiffs, through counsel, made demand upon defendants for damages by reason of the above breaches of the Contract.

30.     Said demand was refused, Defendant Boyd denouncing plaintiffs for having hired a lawyer.

31.     Also in 2004, Longport and Defendants announced a series of "positive news" intended to, and having the effect of, raising the price of Longport's stock.  These announcements included the following:

(a)     sale of 100 Scanners to an entity called Futurescan, with a deposit of $350,000;

(b)     signing of an exclusive U.S. distribution agreement with another company called U.S. MedSys, which supposedly would result in an injection of approximately $1 million of revenue to Longport;

(c)     announcement that, by reason of the U.S. MedSys agreement, Longport had now recorded its first profitable quarter of operations; and

(d)     obtaining a venture financing of approximately $1.5 million.

32.     As a result of these announcements, Longport's stock, which had been trading at a low of $.17 a share in the first quarter of 2004, soared to a high of $1.73 a share in the third quarter of 2004.

33.     In September 2004, the Board extended Defendant Boyd's employment agreement as CEO for an additional year and awarded him an additional million stock options.

34.     Longport also rented expensive new offices and increased its employment role to eight full-time employees.  Defendant Wilson was also given a raise in salary from $78,000 to $128,000.

35.     In 2005, defendants announced that U.S. MedSys had been unable to perform under its exclusive distribution agreement and that the agreement had been terminated.  Public media has since reported that U.S. MedSys is under SEC investigation.  Defendants also announced that Futurescan had only purchased ten of 100 Scanners, which had been touted in the 2004 announcement.

36.     As a result of these revelations, the stock price of Longport's stock has collapsed to approximately $.06 a share.

37.     Recent announcements of purported "positive news" have not resulted in an increase in Longport's stock price.

38.     Upon information and belief, the failure of the market to respond to announcements of "positive news" by Longport is because the market no longer believes the incredulous announcements of current Longport management.

39.     Defendants have since announced that Longport has hired a CFO and a director of marketing at competitive salaries.

40.     The filing of Longport's annual report on Form 10-K was delayed until April 8, 2005.  In that 10-K signed by all the Defendants, Longport reported a loss of $633,532 on total revenue of $2,457,677.  The audit report of Longport's auditors containing a "going concern" qualification.

41.     The annual report on Form 10-K also failed, under Item 3, to disclose the following material facts:

(a)     the pendency and status of a lawsuit with its former president, James McGonigle;

(b)     the pendency and status of a lawsuit with a former employee of Longport; and

(c)     that Plaintiffs had asserted a claim against Longport by demanding through counsel, that Longport make them whole for their damages by reason of Longport's material breaches of the Contract.

42.     In January and February 2005, in light of these negative developments at Longport, Plaintiffs made three demands in writing, pursuant to 8 De.C. sec.22, for a copy of Longport's stockholders list and for certain corporate books and records.

43.     The stated purpose of said demand was to enable Plaintiffs to contact other stockholders of Longport for the purpose of conducting an election contest to change management and the Board of Directors.

44.     After delaying as long as possible, Defendants furnished the stockholder list to Plaintiffs.  In addition, Defendants learned that Plaintiffs had engaged in various permitted preparatory activity for an election contest, including contacting the venture capital funds to enlist their support.

45.     Plaintiffs' counsel, after reviewing the documents and stockholder list produced by Defendants, stated to one of Longport's counsel that Plaintiffs would conduct a consent solicitation, rather than wage a contest at the annual stockholders meeting.

46.     In response, Defendants, via a proxy statement dated May 31, 2005, announced that Longport's annual meeting of stockholders would be held in Fort Lauderdale, Florida on June 30, 2005, the Thursday before the Fourth of July weekend.

47.     In addition, Defendant proposed to Longport's stockholders that the stockholders authorize the issuance of an additional 3 to 6 million shares via the Stock Option Plan.

48.     At page 7 of the 2005 proxy statement, which was signed by Defendant Boyd, Defendants falsely stated that "[w]e are not aware of any hostile takeover bid at

this time."  In truth and in fact, defendants were aware in writing and orally of Plaintiffs' hostile takeover bid.

49.     Although Longport's by-laws require 30 days notice of a stockholders' meeting, Longport's proxy materials, in fact, were not mailed on May 31, 2005.  To the contrary, stockholders known to the Plaintiffs received proxy materials as late as June 13 or 14, 2005.  Some of the individual Plaintiffs never received Longport's proxy materials at all.

50.     Accordingly, Longport did not get the required 30-day notice of its 2005 annual meeting.

51.     Plaintiffs Decker and another JVD and Longport stockholder attended the annual meeting and were two of the <u>five</u> stockholders – other than Defendants – attending the meeting.  Longport has approximately 1,500 stockholders.

52.     Through counsel, Plaintiffs called the Board's attention to the material misstatement in Longport's 2005 proxy statement.

53.     At the meeting, Plaintiffs asked for information on Longport's second quarter earnings and for management's projections for earnings for 2005.

54.     Management refused to answer these questions.

55.     All of the foregoing acts were done by Defendants for an improper purpose and for the purpose of, and had the effect of entrenching Defendants in office and obtaining re-election as directors and officers of Longport by illegal and illegitimate means.

56.     Thereafter, Defendants announced that they had been re-elected as the Board of Directors of Longport and that the amendment of the Stock Option Plan had been approved by the stockholders.

57.     On August 18, 2005, Defendants announced Longport's second quarter earnings.  Among other things, that announcement revealed that:

(a)     for the six months ending June 30, 2005, Longport lost $554,534 on revenues of $575,881; and

(b)     all of the funds previously invested in Longport by the venture funds and all of the monies received from U.S. MedSys had been exhausted and Longport's cash needs were now being met by loans from insiders, in the amount of approximately $160,000.

58.     Based on the above numbers, Longport's monthly burn rate appeared to be $168,333 a month.  Longport's administrative expenses for the first six months of 2005 were $1,000,668, compared to $595,479 for the comparable period in 2004.

59.     Longport's quarterly report on Form 10-Q for the six months ending June 30, 2005, was materially false and misleading in that it failed, as required, to discuss Longport's liquidity crisis, working capital needs or to contain a "going concern" qualification.

60.     In September 2005, Longport announced that it had obtained $1.2 million in new financing from the same consortium of venture capital funds.

61.     On November 15, 2005, Longport announced that its third-quarter results were not available and could not be released on time.  It, therefore, delayed the filing of its third-quarter report on Form 10-Q.

## COUNT I

### Violation of Section 14(8) of the Exchange Act – All Defendants

62.     Plaintiffs repeat and incorporate herein by reference all allegations of Paragraphs 1 through 61 of this Complaint as if set forth at length herein.

63.     This count is brought by the individual Plaintiffs, on behalf of themselves and their fellow stockholders who voted or delivered a proxy in connection with the 2005 meeting, except defendants, and on behalf of Longport, against all the individual Defendants.

64.     As detailed above, the 2005 proxy statement and 2004 annual report on Form 10-K furnished by Defendants in connection with it contained materially false and misleading statements of material fact or omitted material facts, which omissions made other statements of fact materially misleading, upon which the stockholder of Longport reasonably relied in executing and delivering their proxies.

65.     In delivering said proxy statement and annual report, Defendants, except for Defendant Boyd, acted negligently.  Defendant Boyd acted knowingly and intentionally and for the purpose of deceiving the stockholders of Longport.

66.     As a proximate result thereof, the individual Plaintiffs and Longport (which incurred the expenses of a void annual meeting) have incurred injuries in an amount conforming to proof at trial but not less than $150,000.

WHEREFORE, Plaintiffs pray that this Honorable Court issue a decree voiding the results of Longport's 2005 annual meeting, ordering corrective disclosure and a new annual meeting an ordering Defendants to reimburse Longport for the cost of the void

2005 meeting and the new annual meeting, whichever is higher, together with interest and costs.

## COUNT II

### Breach of Duty of Complex Candor – Negligent Misrepresentation – Intentional Misrepresentation – Fraud - Entrenchment – Against All Individual Defendants

67.     Plaintiffs repeat and incorporate herein by reference the allegations of Paragraphs 1-66 of this Complaint as if set forth in full herein.

68.     For the reasons detailed above, the individual Defendants were not validly elected at the 2005 annual meeting of Longport.  The proxy materials and associated annual report on Form 10-K contained intentional, materially false and misleading statements of fact and omissions of material fact which made the statements made, in the circumstances under which they were made, materially false and misleading.

69.     In disseminating said misstatements and omissions, Defendants acted negligently recklessly, or intentionally to the proximate injury of Plaintiffs, Longport and the other outside stockholders of Longport, who voted or delivered a proxy at the 2005 meeting.

70.     In addition, by not giving the 30-day notice required by Longport's by-laws and by conducting the annual meeting in an inconvenient location and on an inconvenient day, Defendants intentionally, recklessly and negligently manipulated Longport's corporate machinery so as to entrench themselves in office and to frustrate stockholder democracy.

71.     The intentional, reckless and/or negligent acts of the Defendants were made as to material facts and in fact relied upon by Plaintiffs or stockholders to their financial detriment, harm and damage, including lost profits, interest and other income.

WHEREFORE, Plaintiffs pray that this Honorable Court issue a decree voiding the results of Longport's 2005 annual meeting, ordering corrective disclosure and a new annual meeting an ordering Defendants to reimburse Longport for the cost of the void 2005 meeting and the new annual meeting, whichever is higher, together with interest and costs.

## COUNT III

### Breach of Contract – JVD Only Against Longport, Boyd & Proctor Only

72.     Plaintiff JVD repeats and incorporates herein by reference the allegations of Paragraphs 1-71 of this Complaint as if set forth at length herein.

73.     As detailed above, Longport materially breached the Contract, which breach caused injury to JVD in terms of lost profits, interest and other income.

74.     As detailed above, Defendants Boyd and Proctor knowingly participated in Longport's breaches of the Contract and, moreover, derived personal financial benefits therefrom.  In addition, as detailed above, Defendant Boyd has stated that he caused Longport to breach the Contract out of motives of personal retaliation against some or all of the Plaintiffs.

75.     As a proximate result thereof, plaintiff JVD has sustained injuries in an amount conforming to proof at trial but not less than $150,000.

WHEREFORE, Plaintiff JVD prays that this Honorable Court enter judgment in its favor and against Defendants Longport, Boyd and Proctor, together with interest and costs.

## COUNT IV

### Breach of Fiduciary Duty – Self-Dealing – Against Boyd and Proctor Only

76.     Plaintiffs repeat and incorporate herein by reference the allegations of Paragraphs 1-74 of this Complaint as if set forth at length herein.

77.     Plaintiffs bring this Count derivatively on behalf of Longport.

78.     For the reasons detailed above, demand on the Board of Directors to sue Boyd and Proctor would be futile.

79.     As detailed above, the transactions with Proctor and the Proctor-related entity, as well as the actions of Boyd constitute prohibited acts of self-dealing in breach of fiduciary duty of undivided loyalty to Longport.

80.     Defendants must account to Longport for all losses sustained by Longport, including profits received by them and cancellation of all improperly-issued stock.

WHEREFORE, Plaintiffs pray that this Honorable Court issue a decree requiring that Defendants Boyd and Proctor account to Longport for all losses sustained by it, including profits and cancellation of all improperly-issued stock, together with such other relief as this Honorable Court may deem appropriate.

## COUNT V

### Pierce the Corporate Veil/Disregard Corporate Entity/Alter Ego Theory

81.     Plaintiffs repeat and incorporate herein by reference the allegations of Paragraphs 1-80 of this Complaint as if set forth at length herein.

82.     As previously detailed above, individual Defendants, Boyd, Proctor, Wilson, Quintavalle, and Clymer were at all times material to this Complaint, directors and/or officers of Longport.

83.     At all times material hereto, it is believed and averred that individual Defendants deliberately created an incepted Longport for the sole purposes of functioning as a "shell corporation" and/or "alter ego" of themselves individually to perpetrate misleading, illegal and fraudulent acts.

84.     It is believed and averred that the corporate façade known as Longport must be disregarded and the corporate veil pierced and that the individual officers and directors be held liable and accountable for their unjust and illegal acts perpetrated obstensively on behalf of Longport.

85.     At all times material hereto, it is believed and therefore averred that the individual defendants were in fact the alter ego of Longport for the following reasons:

(a)     Longport was insufficiently capitalized at the onset for its corporate purposes and activities;

(b)     there was intermingling of funds between Longport and the individual defendants;

(c)     the officers and directors of Longport, including but not limited to, individual defendants were not functioning;

(d)     Longport failed to observe corporate formalities;

(e)     Longport did not pay dividends in the ordinary course of their business;

(f)     Longport failed to maintain corporate books and records;

(g)     individual defendants committed illegal, ultra virus and unauthorized activities under the guise of the corporate façade, which activities were not authorized; and

(h)     for any and all other conduct previously described in the preceding paragraphs of this complaint.

WHEREFORE, Plaintiffs demand that this court disregard the corporate façade known as Longport and impose individual liability on the individual defendants for their acts hereinbefore described.

## COUNT VI

### All Individual Defendants/Participation Theory

86.     Plaintiffs repeat and incorporate herein by reference the allegations of Paragraphs 1-85 of this Complaint as if set forth at length herein.

87.     The individual defendants are liable individually and personally for their tortious, fraudulent and illegal activity which they perpetrated individually on behalf of Defendant Longport.

WHEREFORE, Plaintiffs pray that this Honorable Court issue a decree holding said individual defendants liable personally for the illegal fraudulent and tortious conduct committed while officers/directors at Longport.

MCLAIN LAW OFFICE, P.C.

BY:     _____
        Erv D. McLain, Esquire
        I.D. No. 38795
        The Dodson Building, 2nd Floor
        528 North New Street
        Bethlehem, PA 18018
        (610) 866-9700

17